## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| AARON LAUBACH, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-05-1294-F |
| | ) | |
| JOSEPH SCIBANA, WARDEN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, a federal prisoner appearing *pro se* and *in forma pauperis*, brings this action

pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of the Federal*

*Bureau of Narcotics*, 403 U.S. 388 (1971), seeking declaratory and injunctive relief as well

as damages for alleged violations of his constitutional rights.  The matter has been referred

for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C).  The Federal Bureau

of Prisons (BOP) prepared and submitted a Special Report [Doc. #89] as directed by this

Court.  The following motions are pending: (1) Plaintiff's Motion for Preliminary Injunction

[Doc. #4];[1] (2) a Motion to Dismiss submitted by Defendants Joseph Scibana, Mike England,

Laura Petrash, Barbara Malcher, S. Zeavin, Al Kessler, Margaret Grismner, Denise Aynes,

Debra Des Combes, Shaine Terrall, D. Moore, S. Willis, S. Mora, and J. Ashley (Scibana

Defendants)[Doc. #91];[2] (3) a Motion to Dismiss submitted by Defendant Tilford Molskness

---

[1]Plaintiff filed his motion for preliminary injunction on the same day he filed his Complaint.
The motion is based on the same facts Plaintiff asserts in his Complaint.

[2]Plaintiff has responded to this motion [Doc. #140].

[Doc. #148];[3] (4)  Defendant Susan D. Engle's Motion to Dismiss [Doc. #118];[4] (5)-(6)

Plaintiff's motions for default judgment [Doc. ##131, 156, 157] as to Defendants D. Luche,

T. Jordan, Edward McNerney, F. Molin, and E. Feltz; and (7) Plaintiff's Motion for

Extension of Time to Serve Process as to Defendants W. Lee, B. T. Jones, Mike Maize, Keith

McCorkall, T. C. Peterson, and Norma Castro [Doc. #158].  For the reasons set forth below,

it is recommended that the motions to dismiss of the Scibana Defendants, Defendant

Molskness, and Defendant Engle be granted pursuant to Fed. R. Civ. P. 12(b)(6) for failure

to state a claim upon which relief may be granted in that Plaintiff has failed to satisfy the

exhaustion requirement of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).

It is further recommended that Plaintiff's motion for injunctive relief be dismissed on the

same ground and that Plaintiff's motions for default judgment be denied as moot.  It is

recommended that all claims against the unserved and unresponsive defendants be dismissed

pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii) (giving district courts the power to dismiss an

action brought by a plaintiff proceeding *in forma pauperis* at any time the court determines

that the plaintiff has failed to state a claim upon which relief may be granted) and 42 U.S.C.

---

[3] Plaintiff has responded [Doc. #155].

[4]This Court notified Plaintiff that he could respond to Defendant Engle's Motion to Dismiss on or before September 6, 2006.  Upon consideration of the pending motions to dismiss and further review of Plaintiff's Complaint and attached exhibits, however, it appears that Plaintiff failed to exhaust his administrative remedies as to some of the claims asserted in his Complaint, and consequently his entire action must be dismissed.  If this Report and Recommendation is adopted, the claims against Defendant Engle must also be dismissed, regardless of any response from Plaintiff.  Accordingly, it is recommended that the Court proceed with disposition of all pending motions, including the motion to dismiss filed by Defiant Engle.

§ 1997e(c)(1).[5]  Finally, it is recommended that Plaintiff's Motion for Extension of Time, in

which he seeks additional time to serve some of the named defendants, be denied as moot.

All claims should be dismissed without prejudice. *See Fitzgerald v. Corrections Corporation*

*of America*, 403 F.3d 1134, 1139 (10th Cir. 2005) (dismissal based on lack of exhaustion

should ordinarily be without prejudice).

## I.    Background

Plaintiff is incarcerated at FCI-El Reno.  On November 4, 2001, Plaintiff injured his

right ankle while he was playing soccer.  Plaintiff challenges as unconstitutional the medical

care he received at the institution following this injury.  According to Plaintiff,  his ankle was

fractured, but medical personnel misinterpreted the x-rays and therefore misdiagnosed his

injury.  Plaintiff further states that he was subjected to disciplinary sanctions including time

incarcerated in the Special Housing Unit because he could not walk without a cane as

ordered.[6]

---

[5]"The court shall . . . dismiss any action brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action . . . fails to state a claim upon which relief can be granted[.]"

[6]Plaintiff appealed the findings of guilt and resulting disciplinary sanctions imposed by the disciplinary hearing officer.  Plaintiff stated in his appeals that he was physically unable to obey staff orders that he walk without a cane. He further argued that the disciplinary hearing officer was biased against him.  The Regional Director expunged some of the convictions and ordered rehearings in others. *See* Complaint Ex.6(b), 6(c), and 6(d).

Plaintiff originally named twenty-nine defendants.[7]  His Complaint contains a lengthy chronological recitation of the facts upon which he bases his claims for relief.  *See* Complaint at 5-49.  The factual underpinnings of his claims span a four-year time period beginning on November 5, 2001, when Plaintiff first sought medical attention for his injured ankle.[8]

On April 2, 2002, Plaintiff initiated the BOP's grievance procedure by seeking informal resolution of his complaint about the medical care he had received for his ankle.  A staff member responded that he had scheduled Plaintiff to see the orthopedic consultant at the next special clinic.  *See* Complaint, Ex. 12 at 1.[9]

On May 6, 2002, Plaintiff submitted a grievance on Form BP-9 to Defendant Peterson, then the warden of FCI-El Reno.  Plaintiff stated that "an acredited [sic] doctor" had informed the staff of their misdiagnosis.  He asked Defendant Peterson to review his case and impose disciplinary sanctions on the medical staff involved.  He also sought "proper medical care and therapy."  Complaint Ex. 12 at 2.  Plaintiff's Form BP-9 was rejected on May 8, 2002, because he had not produced evidence of his attempt at informal resolution.  Complaint

---

[7]This Court granted Plaintiff's Motion to Dismiss [Doc. #114] two of the twenty-nine defendants.  *See* Order [Doc. #135] granting Plaintiff's motion to dismiss all claims against S. Mora and Audrey Whittle.

[8]Given that the statute of limitations governing Plaintiff's action is two years, *see Price v. Philpot*, 420 F.3d 1158, 1162 (10th Cir. 2005) (state statute of limitation is applied in civil rights actions; Oklahoma's limitation period is two years), it is likely that some of his claims are time barred.  Because Plaintiff's entire cause of action must be dismissed based on his failure to exhaust his administrative remedies, however, this Court need not address the timeliness of Plaintiff's claims.

[9]The BOP's four-step administrative remedy process is described at 28 U.S.C. § 542.10-542.19.

Ex. 12 at 3.  Plaintiff apparently attempted to file a Form BP-9 a second time, but that grievance was rejected as untimely on May 15, 2002.  Complaint Ex. 12 at 4.

On May 16, 2002, Plaintiff again began the grievance procedure by submitting a document to a staff member seeking informal resolution of Plaintiff's complaints.  Plaintiff again complained that he had not received proper medical care for his ankle.  He asked that "immediate action be taken to find the exstent [sic] of [his] injury so that proper medical steps may be taken."  Plaintiff again asked that disciplinary action be taken against the "medical staff."  Defendant Lee responded on June 4, 2002.

> Total 5 x rays of affected ankle [were] taken.  All 5 reports were negative for fractures.  IM Laubach asked me second opinion on 12.03.01.  At that time my finding suggested fracture of distal fibula.  I'd recommended short leg cast after elevation and ice. [Nurse Practitioner] F. Molina submitted consult to orthopedic service.  Dr. (Orthrop) supported my finding & concurred indeed there were fracture as I'd stated 12.03.01 & recommended additional follow up.  My understanding was that some type of orthop. brace was to be considered after re-eval. 1 month after 4/25/02 consult.  The Pt. was seen in timely manner under orthop. service on a monthly basis from 11.29.02 to 4.25.02.  Upon review of medical chart, I did not observe a pattern of neglect of care or delays.

Complaint Ex. 12 at 5-6.

On June 9, 2002, Plaintiff submitted a formal grievance on Form BP-9, Request for Administrative Remedy, to Defendant Peterson.  Plaintiff repeated his charge that "medical staff" had misdiagnosed his ankle injury.  He alleged that the medical staff was "incompetent and inhuman" and that they were "down grading [his] diagnosis in an attempt to cover-up their serious wrong doing."  Complaint Ex. 12 at 7.  He again requested Defendant Peterson to review his case and impose disciplinary sanctions.  He also requested medical treatment

from a different doctor to determine the extent of his injury.  Complaint Ex. 12 at 7.

Defendant Peterson responded to Plaintiff's Request for Administrative Remedy on June 28,

2002, stating that Plaintiff had been seen by the consultant orthopedist three times since

December 2001 for an "avulsion fracture" of one of the bones in Plaintiff's lower leg.

Defendant Peterson further stated that the "clinical director has advised that this is a non-

weight bearing bone and should not present any difficulty when you walk."  Defendant

Peterson added that Plaintiff had been examined by the consultant orthopedist on June 20,

2002, and that this doctor "informed you that your injury had healed, and you no longer need

to use a walking cane." Defendant Peterson concluded that Plaintiff had received appropriate

medical treatment.  Complaint Ex. 12 at 9.

On July 9, 2002, Plaintiff appealed the denial of his grievance to the Regional Office

of the Federal Bureau of Prisons by submitting a completed Form B-10.  Plaintiff repeated

his charges against the medical staff and requested that an MRI be ordered to determine the

extent of his injury.  Complaint Ex. 12 at 10.  Ronald G. Thompson, the Regional Director,

affirmed Defendant Peterson's denial of Plaintiff's request for administrative remedy on the

basis that the Clinical Director had determined that proper treatment of Plaintiff's ankle did

not require an MRI diagnostic test.  He further stated that Plaintiff had received appropriate

medical treatment and had been provided essential medical care.  Complaint Ex. 12 at 13.

On August 26, 2002, Plaintiff filed an appeal to the Central Office of the Federal

Bureau of Prisons by submitting a completed Form BP-11. Plaintiff alleged that the medical

staff at FCI-El Reno had acted with deliberate indifference to his serious medical needs.

Complaint Ex. 12 at 15.  On October 4, 2002, Harrell Watts, the Administrator of National

Inmate Appeals, denied Plaintiff's appeal, stating, "The record reflects you are receiving

medical care and treatment in accordance with Bureau policy.  There is no clinical indication

which would warrant further testing, rehabilitation, or surgery."  Complaint Ex. 12 at 16.

The documents attached to Plaintiff's Complaint as Exhibit 12 are the only documents

he has submitted as evidence of the steps he took to exhaust his administrative remedies as

to the claims he raises in his Complaint.[10]

## II.     Claims Presented in the Complaint

In his Complaint, Plaintiff lists several claims for relief.  *See* Complaint at 49.

Plaintiff's first claim for relief is based on allegations that FCI-El Reno has a policy and

custom which encourages medical personnel to minimize the extent of injuries suffered by

inmates in order to spend less than the money budgeted for medical services.  Plaintiff states

that this policy and custom resulted in the misdiagnosis of his ankle fracture and the resulting

inadequate medical treatment which led to unnecessary pain and suffering.

Plaintiff next asserts a claim for relief based on allegations that the medical staff

denied and delayed his access to an administrative remedy and then retaliated against him

by taking away his crutches and cane, refusing to give him proper medical restrictions for his

prison job, denying his request for pain medication, and ultimately confining him in the

administrative detention unit.

---

[10]As discussed *supra* n. 6, the documents attached as exhibits 6(b), 6(c), and 6(d) to
Plaintiff's Complaint are Plaintiff's appeals of the decisions of the disciplinary hearing officer in
disciplinary actions taken against Plaintiff.

Plaintiff further claims that prison staff violated the Privacy Act by failing to comply

with authorized third-party requests for medical records and files.

Finally, Plaintiff claims that prison officials were deliberately indifferent to his serious

medical needs and that the deliberate indifference resulted in the permanent loss of the full

use of his ankle and foot and continued intense pain.

III.    Analysis

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) mandates exhaustion

of administrative remedies in actions, such as this one, in which prison conditions are

challenged.  Section 1997e(a) provides:

> No action shall be brought with respect to prison conditions under section
> 1983 of this title, or any other Federal law, by a prisoner confined in any jail,
> prison, or other correctional facility until such administrative remedies as are
> available are exhausted.

42 U.S.C. § 1997e(a).[11]  Actions filed before the exhaustion requirement is satisfied must be

dismissed.  *Booth v. Churner*, 532 U.S. 731, 740-741 (2001).  "Exhaustion is no longer left

to the discretion of the district court, but is mandatory."  *Woodford v. Ngo*, ___ U.S. ___, 126

---

[11]In *Woodford v. Ngo*, ___ U.S. ___, 126 S.Ct. 2378 (2006), the Supreme Court rejected the idea that an administrative grievance process becomes unavailable because the prisoner does not comply with the procedural rules and cannot obtain relief for that reason.  A court must, therefore, consider the reason why the grievance process is unavailable.  *See* 126 S.Ct. at 2387, 2392-93. When the prisoner himself causes the unavailability of the grievance process by simply not filing a grievance in a timely manner, the process is not unavailable; rather, it is forfeited.  *See Kaba v. Stepp*, ___ F.3d ___, 2006 WL 2358002 at *5 (7th Cir. Aug. 16, 2006) (discussing *Ngo*) (to be published).  The fact that a prisoner does not timely submit a grievance, then, does not make the administrative remedy "unavailable" to him.  *See Ngo* at 2386 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.").

S.Ct. 2378, 2382 (2006); *see also Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1207

(10th Cir. 2003) ("[T]he substantive meaning of § 1997e(a) is clear: resort to a prison

grievance process must precede resort to a court."). *Ngo* involved a state prisoner's duty to

exhaust administrative remedies before filing a civil rights action pursuant to 42 U.S.C. §

1983.  The Court specified, however, that "exhaustion of available administrative remedies

is required for any suit challenging prison conditions, not just for suits under § 1983." *Id.*

at 2383 (internal citations omitted).[12]

In *Steele*, the Tenth Circuit stated that a prisoner must allege the requisite exhaustion

of remedies and either attach copies of the applicable administrative dispositions to his

complaint or describe his efforts to exhaust his administrative remedies with specificity.

*Steele*, 355 F.3d at 1210.  "[A] complaint that fails to allege the requisite exhaustion of

remedies is tantamount to one that fails to state a claim upon which relief may be granted."

*Id.* (internal quotations and citation omitted).

In this case, Plaintiff both alleged exhaustion of administrative remedies and attached

copies of dispositions of his grievances to his Complaint.  *See* Complaint Ex. 12.  But the

Tenth Circuit has also interpreted section 1997e(a) to require total exhaustion of a prisoner's

claims.  *Ross v. County of Bernalillo*, 365 F.3d 1181, 1189 (10th Cir. 2004).  The presence

of unexhausted claims in a prisoner's complaint requires dismissal of the action in its entirety

without prejudice.  *Id.*

_____

[12]The holding in *Ngo* does not exclude a claim for preliminary injunctive relief from the exhaustion requirement.  In fact, *Ngo* specifies that exhaustion of administrative remedies  is necessary before any action based on prison conditions is filed in federal court.  Therefore, Plaintiff's Motion for Preliminary Injunction should also be dismissed.

Plaintiff has exhausted his administrative remedies as to claims arising from the allegedly inadequate medical treatment he received before May 16, 2002, when Plaintiff initiated the grievance procedure. "A grievance obviously cannot exhaust administrative remedies for claims based on events that have not yet occurred. Nor does a grievance exhaust administrative remedies for all future complaints of the same general type." *Id.* at 1188. Therefore, Plaintiff's claims challenging acts or omissions of the medical staff occurring after he initiated the grievance process remain unexhausted.[13] Additionally, it is apparent that Plaintiff never submitted a grievance identifying and challenging any policy or custom in place at FCI-El Reno, that he never submitted a grievance based on prison official's allegedly retaliatory conduct,[14] and that he never submitted a grievance regarding the alleged violation of the "Privacy Act" by prison officials.

Because Plaintiff has failed to exhaust his administrative remedies with respect to all claims for relief he has raised in his Complaint, it is recommended that this action be dismissed without prejudice, as more fully set forth in the recommendation below.

---

[13]For example, Plaintiff's claim that Defendant McNerney refused to renew Plaintiff's prescription for a cane in retaliation for Plaintiff's having insisted on adequate medical treatment is based on a June 17, 2004, incident. *See* Complaint at 27, 50.

[14]Although Plaintiff challenged his disciplinary convictions through the disciplinary appeals process, (*see* Complaint Ex. 6(b), 6(c), and 6(d)), he never raised a claim of retaliation in any of his disciplinary hearing appeals, and he never used the prison administrative grievance process to assert claims of retaliation.

## RECOMMENDATION

It is recommended that the Motions to Dismiss of the Scibana Defendants, Defendant Molskness, and Defendant Engle [Doc. ##91, 118, 148] be granted pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that Plaintiff has failed to state a claim upon which relief may be granted by failing to satisfy the exhaustion requirement of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). It is recommended that Plaintiff's Motion for Injunctive Relief [Doc. #4] be dismissed on the same grounds. It is recommended that Plaintiff's motions for entry of default judgment [Doc. ##131, 156, 157] be denied as moot. Because Plaintiff's failure to exhaust his administrative remedies with respect to all claims raised is tantamount to failing to state a claim upon which relief may be granted, it is further recommended that all claims against both unserved and unresponsive Defendants be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii) and 1997e(c)(1). Finally, it is recommended that Plaintiff's Motion for Extension of Time [Doc. #158] be denied as moot.

## NOTICE OF RIGHT TO OBJECT

Plaintiff is advised of his right to object to this Report and Recommendation. *See* 28 U.S.C. §636. Any objections should be filed with the Clerk of this Court by September ___19th___, 2006. Plaintiff is further advised that failure to file a timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of the issues referred by the District Judge.

IT IS SO ORDERED this __30th__ day of August, 2006.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE