## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| AARON LAUBACH, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-05-1294-F |
| | ) | |
| JOSEPH SCIBANA; T. C. PETERSON; | ) | |
| T. JORDAN; MICHAEL ENGLAND; LAURA | ) | |
| PETRASH; NORMA CASTRO;[1] EDWARD | ) | |
| MCNERNEY; D. LUCHE; F. MOLINA; | ) | |
| BARBARA MALCHER; W. LEE;[2] S. | ) | |
| ZEAVIN; SUSAN ENGLE; TILFORD | ) | |
| MOLSKNESS; B. T. JONES; MIKE MAZE; | ) | |
| KEITH MCCORALL; AL KESSLER; | ) | |
| MARGARET GRISMNER; DENISE AYNES; | ) | |
| DEBRA DES COMBS; SHAIN TERRALL; | ) | |
| AUDREY WHITTLE;[3] E. FELTZ; D. | ) | |
| MOORE; S. WILLIS; S. MORA;[4] J. ASHLEY; | ) | |
| J. FOWNER; | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, a federal prisoner appearing *pro se* and *in forma pauperis*, brings this action

pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of the Federal*

*Bureau of Narcotics*, 403 U.S. 388 (1971), alleging violations of his constitutional rights.

---

[1]Defendant Castro's Motion to Quash service was granted on June 22, 2006 [Doc. #127], and Plaintiff has not subsequently served this Defendant.

[2]There is no record of service on Defendant Lee.

[3]Plaintiff's Motion to Dismiss [Doc. #114] Defendant Whittle was granted. *See* Order [Doc. #135],

[4]Plaintiff's Motion to Dismiss [Doc. #114] Defendant Mora was granted. *See* Order [Doc. #135].

The matter has been re-referred after remand by the United States Court of Appeals for the Tenth Circuit. *See* Order and Judgment of the Court of Appeals dated May 3, 2007 [Doc. #184] and Order of Referral dated May 29, 2007 [Doc. #185].[5]

The Federal Bureau of Prisons (BOP) prepared and submitted a Special Report [Doc. #89] as directed by the Court.[6] The following motions are pending: (1) Plaintiff's Motion for Default Judgment as to Defendants T. Jordan, Edward McNerney, D. Luche, F. Molina, E. Feltz, and J. Fowner [Doc. #188];[7] (2) a Motion to Dismiss submitted by Defendants Joseph Scibana, Mike England, Laura Petrash, Barbara Malcher, S. Zeavin, Al Kessler, Margaret Grismner, Denise Aynes, Debra Des Combes, Shaine Terrall, D. Moore, S. Willis, S. Mor a,[8] and J. Ashley (Scibana Defendants) [Doc. #91] as supplemented by their Supplemental Motion to Dismiss [Doc. #214];[9] (3) a Motion to Be Dismissed submitted by

---

[5]Plaintiff's action was originally dismissed on October 27, 2006, pursuant to then-controlling Tenth Circuit case law, for failure to exhaust administrative remedies as to all claims raised in the Complaint. *See* Doc. #168. Plaintiff appealed, and the Tenth Circuit Court of Appeals vacated this Court's decision based on intervening Supreme Court law, *Jones v. Bock*, ___ U.S. ___, 127 S. Ct. 910 (2007). The case was remanded for further proceedings in accordance with *Jones v. Bock. See* Order and Judgment dated May 3, 2007 [Doc.#184]. Pursuant to remand instructions, this Court entered a supplemental scheduling order on June 11, 2007 [Doc. #187], to afford Defendants an opportunity to meet their burden of proving failure to exhaust. Defendants were permitted to file supplements in support of their original motions to dismiss, and Plaintiff was afforded the opportunity to respond. The time allotted for supplemental briefing has elapsed, and the original motions to dismiss, as supplemented by some of the defendants, are now once again at issue.

[6]Plaintiff filed a Response to Special Report [Doc. #147] with attached exhibits.

[7]All of these Defendants have been served, but none has responded.

[8]*See* n. 4.

[9]Plaintiff responded to this motion and to the supplemental brief. *See* Doc. ##140, 222.

Defendant Susan D. Engle [Doc. #118];[10] (4) a Motion to Dismiss submitted by Defendant Tilford Molskness [Doc. #148] as supplemented by his Supplemental Brief in Support of Motion to Dismiss for Failure to Exhaust Administrative Remedies [Doc. #197];[11] (5) Plaintiff's Motion for Temporary Restraining Order [Doc. #211]; (6) Plaintiff's Motion for Preliminary Injunction [Doc. #216]; and (7) Plaintiff's Motion for Default Judgment as to Defendants K. McCorkall, B.T. Jones, Mike Maize, and T.C. Peterson; [Doc. #224].[12]

The record, as supplemented on remand, demonstrates that certain claims asserted in Plaintiff's Complaint are time-barred by the statute of limitations and the remainder of the claims are subject to dismissal without prejudice for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(c)(1). It is therefore recommended that the motions to dismiss of the Scibana Defendants as supplemented, Defendant Molskness as supplemented, and Defendant Engle [Doc. ##91/214, 148/197 and 118] be granted. It is recommended that all claims against the unresponsive Defendants and the unserved Defendants be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii) and 42 U.S.C. § 1997e(c)(1). Further, Plaintiff's motions for entry of default judgment [Doc. ##188, 224] and motions for injunctive relief [Doc. ##211, 216] should be denied.

---

[10]Plaintiff responded to Defendant Engle's Motion to Be Dismissed. *See* Doc. #162. Defendant Engle did not supplement her Motion to Be Dismissed.

[11] Plaintiff responded to this motion and to the supplemental brief. *See* Doc. ##155, 206.

[12]These Defendants have all been served, but none has responded.

3

## I.    Background

At all times relevant to this case, Plaintiff was incarcerated at FCI-El Reno. On November 4, 2001, Plaintiff injured his right ankle while he was playing soccer. Plaintiff challenges as unconstitutional the medical care he received at the institution following this injury. According to Plaintiff, his ankle was fractured, but medical personnel misinterpreted the x-rays and therefore misdiagnosed his injury. Plaintiff further states that he was subjected to disciplinary sanctions in 2004 including time incarcerated in the Special Housing Unit (SHU) because he could not follow prison officials' orders to walk without a cane.

Plaintiff's Complaint consists of a lengthy chronological recitation of allegations upon which he bases his claims for relief. *See* Complaint at 5-49. The factual underpinnings of his claims span a four-year time period beginning on November 5, 2001, when Plaintiff first sought medical attention for his injured ankle. Plaintiff's Complaint naming twenty-nine defendants was filed on November 7, 2005.

## II.   Claims Presented in the Complaint

Plaintiff asserts several claims for relief. *See* Complaint at 49. First, Plaintiff claims that FCI-El Reno has a policy and custom which encourages medical personnel to minimize the extent of injuries suffered by inmates so that less money will be spent on medical services than is budgeted. Plaintiff states that this policy and custom resulted in the misdiagnosis of his ankle fracture and the resulting inadequate medical treatment which led to unnecessary pain and suffering.

4

Plaintiff further claims that the medical staff denied and delayed his access to an administrative remedy and then retaliated against him by taking away his crutches and cane, refusing to give him proper medical restrictions for his prison job, denying his request for pain medication, and ultimately confining him in the administrative detention unit.

Plaintiff's next claim is based on allegations that the prison staff violated the Privacy Act by failing to comply with his father's authorized requests for Plaintiff's medical records and files.

Finally, Plaintiff claims that prison officials were deliberately indifferent to his serious medical needs and that the deliberate indifference resulted in the permanent loss of the full use of his ankle and foot and continued intense pain.

## III. Analysis

### A. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), mandates exhaustion of administrative remedies in actions, such as this one, in which prison conditions are challenged. Section 1997e(a) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Actions filed before the exhaustion requirement is satisfied must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-741 (2001). "Exhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford v. Ngo*, ___ U.S. ___, 126

S.Ct. 2378, 2382 (2006). *Woodford* involved a state prisoner's duty to exhaust administrative remedies before filing a civil rights action pursuant to 42 U.S.C. § 1983. The Court specified, however, that "exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983." *Id.* at 2383 (internal citations omitted).

A prisoner's failure to exhaust administrative remedies is an affirmative defense that generally must be raised by defendants in a civil rights action. It is a defendant's burden to prove that a prisoner has not exhausted available administrative remedies. *See Jones v. Bock,* 127 S. Ct. at 921 ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). When a district court is presented with a complaint containing both exhausted and unexhausted claims, the district court should employ the "typical claim-by-claim approach" and dismiss only those claims which are not exhausted. *Id.* at 926. Both the Scibana Defendants and Defendant Molskness have asserted Plaintiff's failure to exhaust his administrative remedies as an affirmative defense and submitted evidence in support of their burden of proof under *Jones v. Bock.* Therefore, this Court must first examine the record to determine on a claim-by-claim basis which, if any, of Plaintiff's claims have been exhausted through th e administrative process available to prisoners who want to challenge the conditions of their confinement.

6

## 1.     Administrative Grievances Challenging Medical Care

A federal inmate may seek administrative review of an issue relating to the inmate's conditions of confinement through a four-step Administrative Remedy Program. *See* 28 C.F.R. § 542.10-542.19. At step one, an inmate may present a request to staff, informally addressing his concerns. *See* 28 C.F.R. § 542.13. If an inmate's attempt to resolve an issue informally through a request to staff is unsuccessful, the inmate may submit a written grievance to a designated staff member at the institutional level using Form BP-9. The grievance must be submitted within 20 calendar days following the date on which the basis for the request occurred. *See* 28 C.F.R. § 542.14. An inmate who is not satisfied by the response at the local institutional level may appeal on Form BP-10 to the appropriate Regional Director. An inmate who is not satisfied by the Regional Director's response may take the final step in the grievance process by appealing the decision on Form BP-11 to the General Counsel of the Bureau of Prisons. *See* 28 C.F.R. § 542.15.

On April 2, 2002, Plaintiff initiated the BOP's grievance procedure by seeking informal resolution of his challenge to the medical care he had received for his ankle. A staff member responded that he had scheduled Plaintiff to see the orthopedic consultant at the next special clinic. *See* Response to Special Report, Exhibit 12 at 2.

On May 6, 2002, Plaintiff submitted a grievance on Form BP-9 to Defendant Peterson, then the warden of FCI-El Reno. Plaintiff stated that "an acredited [sic] doctor" had informed the staff of their misdiagnosis. He asked Defendant Peterson to review his case and impose disciplinary sanctions on the medical staff involved. He also sought "proper medical

7

care and therapy." *Id.* at 3. Plaintiff's Form BP-9 was rejected on May 8, 2002, because he had not produced evidence of his attempt at informal resolution. *Id.* at 4. Plaintiff apparently attempted to file a Form BP-9 a second time, but that grievance was rejected as untimely on May 15, 2002. *Id.* at 5.

On May 16, 2002, Plaintiff again began the grievance procedure by submitting a document to a staff member seeking informal resolution of Plaintiff's medical complaints. Plaintiff again complained that he had not received proper medical care for his ankle. He asked that "immediate action be taken to find the exstent [sic] of [his] injury so that proper medical steps may be taken." Plaintiff again asked that disciplinary action be taken against the "medical staff." Defendant Lee responded on June 4, 2002:

> Total 5 X rays of affected ankle [were] taken. All 5 reports were negative for fractures. IM Laubach asked me second opinion on 12.03.01 & at that time my finding suggested fracture of distal fibula. I'd recommended short leg cast after elevation and ice. NP [Nurse Practitioner] F. Molina submitted consult to orthopedic service. Dr. (Orthop) supported my finding & concurred indeed there were fracture [sic] as I'd stated 12.03.01 & recommended additional follow up. My understanding was that some type of orthop. brace was to be considered after re-eval. 1 month after 4/25/02 consult. Pt. was seen in timely manner under orthop. service on a monthly basis from 11.29.02 to 4.25.02 [sic]. Upon review of medical chart, I did not observe a pattern of neglect of care or delays.

*Id.* at 6-7.

On June 9, 2002, Plaintiff submitted a formal grievance on Form BP-9, Request for Administrative Remedy, to Defendant Peterson. Plaintiff repeated his charge that "medical staff" had misdiagnosed his ankle injury. He alleged that the medical staff was "incompetent and inhuman" and that they were "down grading [his] diagnosis in an attempt to cover-up any

8

serious wrong doing." *Id.* at 8. He again requested Defendant Peterson to review his case and impose disciplinary sanctions on the medical staff. He also requested medical treatment from a different doctor to determine the extent of his injury. *Id.* Defendant Peterson responded to Plaintiff's Request for Administrative Remedy on June 28, 2002, stating that Plaintiff had been seen by the consultant orthopedist three times since December 2001 for an "avulsion fracture" of one of the bones in Plaintiff's lower leg. Defendant Peterson further stated that the "clinical director has advised that this is a non-weight bearing bone and should not present any difficulty when you walk." Defendant Peterson added that Plaintiff had been examined by the consultant orthopedist on June 20, 2002, and that this doctor "informed you that your injury had healed, and you no longer need to use a walking cane." Defendant Peterson concluded that Plaintiff had received appropriate medical treatment. *Id.* at 10.

On July 9, 2002, Plaintiff appealed the denial of his grievance to the Regional Director by submitting a completed Form BP-10. Plaintiff repeated his charges against the medical staff and requested that an MRI be ordered to determine the extent of his injury. *Id.* at 11. Ronald G. Thompson, the Regional Director, affirmed Defendant Peterson's denial of Plaintiff's request for administrative remedy on the basis that the Clinical Director had determined that proper treatment of Plaintiff's ankle did not require an MRI diagnostic test. He further stated that Plaintiff had received appropriate medical treatment and had been provided essential medical care. *Id.* at 14.

On August 26, 2002, Plaintiff filed an appeal to the General Counsel of the Bureau of Prisons by submitting a completed Form BP-11. Plaintiff alleged that the medical staff at FCI-El Reno had acted with deliberate indifference to his serious medical needs. *Id.* at 16. On October 4, 2002, Harrell Watts, the Administrator of National Inmate Appeals, denied Plaintiff's appeal, stating, "The record reflects you are receiving medical care and treatment in accordance with Bureau policy. There is no clinical indication which would warrant further testing, rehabilitation, or surgery." *Id.* at 17.

Plaintiff followed all the steps of the administrative process with regard to his claim that prison officials had been deliberately indifferent to his serious medical needs, and the administrative process was completed on October 4, 2002. Plaintiff's exhaustion of administrative remedies applies, however, only to his claims arising from the allegedly inadequate medical treatment he received after his ankle injury on November 4, 2001, and before May 16, 2002, when he initiated the grievance procedure. "A grievance obviously cannot exhaust administrative remedies for claims based on events that have not yet occurred. Nor does a grievance exhaust administrative remedies for all future complaints of the same general type." *Ross v. County of Bernalillo*, 365 F.3d 1181, 1188 (10th Cir. 2004) *abrogated on other grounds by Jones v. Bock*, 127 S.Ct. 910 (2007). Plaintiff's claims challenging acts or omissions of the medical staff occurring after he initiated the grievance process cannot have been exhausted by Plaintiff's resort to the administrative remedies described above. Additionally, Plaintiff never submitted a grievance identifying and challenging any policy or custom in place at FCI-El Reno, nor did he submit a grievance based on prison official's

10

allegedly retaliatory conduct. Finally, Plaintiff did not challenge the alleged violation of the "Privacy Act" by prison officials. In sum, Plaintiff exhausted his administrative remedies through the BOP grievance system only as to claims of deliberate indifference to his serious medical needs based on acts or omissions occurring before May 16, 2002. All other claims asserted by Plaintiff are subject to dismissal pursuant to 42 U.S.C. § 1997e(a) for failure to exhaust available administrative remedies prior to asserting them in federal court.

## 2. Disciplinary Appeals

The Tenth Circuit's Order and Judgment remanding this case directed this Court to determine whether Plaintiff's disciplinary appeals could be construed as exhausting his administrative remedies as to some of his Eighth Amendment medical claims which arose after he had completed the grievance process described above:

The court should also reevaluate whether Plaintiff's disciplinary appeals in fact exhausted some of his claims. While we make no ruling on this issue, it seems to us that resolving the underlying medical treatment issue must have been a necessary predicate to deciding whether the disciplinary sanctions imposed were appropriate.

Order and Judgment [Doc. #184] at 5 n.2.

It is not clear that an administrative appeal of a prison disciplinary conviction can be construed as exhaustion of an Eighth Amendment conditions-of-confinement claim, and policy concerns militate against such a construction. Although the two administrative procedures are similar, they are not identical. Unlike the grievance procedure generally used to challenge prison conditions, the initial appeal of a prison disciplinary action is directed to the Regional Director by submission of a Form BP-10, not by the submission of a Form BP-9

11

to the warden or other designated staff of the local institution. *See* 28 C.F.R. § 542.14(d)(2).[13]   One purpose of the exhaustion requirement of the PLRA is to provide "prisons with a fair opportunity to correct their own errors." *Woodford v. Ngo*, 126 S. Ct. at 2381. Additionally, "'[i]n some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation.'" *Beaudry v. Corrections Corporation of America*, 331 F.3d 1164, 1167 (10th Cir. 2003) (*quoting Porter v. Nussle*, 534 U.S. 516, 525 (2002)). These purposes would be thwarted if the allegedly unconstitutional condition of confinement was first presented to the Regional Director in the form of a tangential disciplinary appeal rather than to the warden or other designated staff of the prison in the form of a grievance directly challenging the allegedly unconstitutional condition. But even if a challenge to an allegedly unconstitutional condition of confinement could be exhausted through an appeal of a disciplinary conviction, Plaintiff's claims asserted in this case were not so exhausted.

Beginning in June 2004 approximately 2-1/2 years after Plaintiff's ankle injury, a series of incident reports were lodged against Plaintiff either for Refusing to Work or Accept a Program Assignment (Code 306) or Refusing to Obey an Order (Code 307) or both. Typically, the incident reports alleged that Plaintiff refused to walk without the aid of a cane and, therefore, refused to walk to work or to another prison unit, claiming that he was physically unable to do so.

---

[13]Both procedures require the submission of a  Form BP-11 to the General  Counsel to complete the appeals process. See 28 C.F.R. § 542.15(a)-(b).

12

Relevant disciplinary actions during this time period stem from the decision of a physician's assistant to discontinue Plaintiff's prescription for a cane. On June 17, 2004, Plaintiff went to the medical unit to request a refill of his prescriptions for a cane and for Naproxen. Plaintiff was seen by Defendant McNerney. *See* Special Report [Doc. #89] Exhibit 2 at 37-38.[14] Defendant McNerney's medical notes state that since September 2003, Plaintiff had been urged to begin bearing weight on his injured ankle. He further states that Plaintiff was "resistant to treatment plan & wants cane renewed." *Id.* at 38. Finding no acute problems with Plaintiff's ankle, Defendant McNerney did not renew the cane prescription and reportedly told Plaintiff to begin bearing weight on his ankle. He did, however, refill Plaintiff's prescription for Naproxen, instructed Plaintiff to elevate his ankle as needed, and continued work restrictions for 30 days. *Id.* In an addendum to his notes, Defendant McNerney wrote:

> Pt. refused to give up cane – said "take me to the hole." Lt. & correction officer notified & inmate is carted to SHU – incident report initiated.

*Id.*

On June 21, 2004, a disciplinary hearing officer (DHO) found Plaintiff guilty of Code 307, Refusing to Obey an Order, based on Plaintiff's admission that he had refused to give his cane to Defendant McNerney and that, therefore, the facts set forth in the incident report

---

[14]Exhibit 2 consists of Plaintiff's medical records. Plaintiff's account of this incident begins on page 27 of his Complaint and is consistent with the account in the medical records.

were true. Plaintiff did not appeal the DHO's decision. *See* Scibana Defendants' Supplemental Motion to Dismiss [Doc. #214], Exhibit 1 Attachment 3 at 24.[15]

On June 23, 2004, Defendant Zeavin examined Plaintiff in the medical unit. Dr. Zeavin noted no swelling in the ankle as well as good pulses and hair growth. He instructed Plaintiff to continue the medication and increase weight bearing and walking. He stated that Plaintiff did not need a cane. *See* Special Report [Doc. #89] Exhibit 2 at 39. Later that day, an officer came to Plaintiff's cell in the SHU and ordered him to return to the compound. Plaintiff reports that he told the officer he could not go to the compound because he could not walk without a cane. Complaint at 31. Another incident report was issued, and at the July 5, 2004 disciplinary hearing, Plaintiff admitted that he refused to go to the compound. He was found guilty of Code 306, Refusing Work/Program Assignment, and Code 307, Refusing to Obey an Order. *See* Scibana Defendants' Supplemental Motion to Dismiss Exhibit 1 Attachment 3 at 23.

On August 9, 2004, an officer went to Plaintiff's cell and informed him that he was "on a list to go out." Plaintiff again refused to leave his cell, claiming that he was unable to walk without a cane. Complaint at 34. Once again an incident report was filed, and Plaintiff was found guilty of violating Codes 306 and 307. *See* Scibana Defendants' Supplemental Motion to Dismiss Exhibit 1, Attachment 3 at 23. Plaintiff appealed the DHO's August 26, 2004, finding of guilt. As a defense to the charges, Plaintiff stated that he was medically incapable of complying with the order of the staff member without causing serious pain and

---

[15]Attachment 3 is the Inmate Discipline Data Chronological Disciplinary Record.

14

harm to himself. *See* Scibana Defendant's Supplemental Motion to Dismiss Exhibit 1,

Attachment 5 at 31. On January 11, 2005, the Regional Director ordered a new hearing. *Id.*

at 32. In a letter sent to Defendant Peterson on the same date, the Regional Director

explained why he was ordering the rehearing. First, the Regional Director noted that the

DHO had failed to address Plaintiff's claim that he was medically incapable of following the

order. The Regional Director recommended that the DHO conduct a rehearing and provide

medical documentation for the record. In the event that the DHO found no medical necessity

for Plaintiff to have a cane, the DHO was instructed to consider only the Code 306 violation

because "[t]aking action on both charges is a repetitive finding, because the elements of both

offenses are the same, and constitute only the Code 306 finding." *Id.* at 33.[16]

In a rehearing held on January 27, 2005, Plaintiff was again found guilty of violating

Codes 306 and 307. *Id.* Attachment 3 at 23. In response to Plaintiff's appeal, the Regional

Director noted that the Code 307 charge had been expunged. As for the finding of guilt on

the Code 306 charge, the Regional Director rejected Plaintiff's defense:

> You contend you refused to re-enter general population because of your
> medical requirement to have a cane. However, the DHO adequately addressed
> this issue in Section V of the DHO report.

*Id.* Attachment 8 at 43. Plaintiff was informed that his request for relief at the Regional level

was, therefore, "partially granted" through expungement of the duplicative charge, and he

---

[16]Plaintiff apparently prematurely appealed the results of the rehearing to the General
Counsel. *See id.* Exhibit 1, Attachment 6 at 36. In a response dated April 19, 2005, Harrell Watts,
Administrator for National Inmate Appeals, informed Plaintiff that he must first reinstate his appeal
of the results of the rehearing to the Regional Director. *Id.*

was given further instructions for the final step required to exhaust the administrative remedy process:

> In the event you are dissatisfied with this response, you may appeal to the Bureau of Prisons, Administrative Remedy Section, 320 First Street, NW, Washington, D.C. 20534.

*Id.* In a letter to the warden regarding the outcome of Plaintiff's regional appeal, the Regional Director noted that "[i]n the rehearing, the DHO indicates the lack of validity in inmate Laubach's claim to require a cane." *Id.* at 44. Plaintiff did not appeal the decision of the Regional Director, and therefore the General Counsel did not review the DHO's findings, affirmed by the Regional Director, regarding the validity of Plaintiff's medical need for a cane.[17]

In each of his appeals of disciplinary convictions, Plaintiff referenced Defendant McNerney's June 17, 2004, decision to discontinue Plaintiff's prescription for a cane. If an administrative appeal of a disciplinary conviction could be construed as exhausting an Eighth Amendment conditions-of-confinement claim, Plaintiff's claim against Defendant McNerney regarding the discontinuation of Plaintiff's prescription for a cane could arguably have been exhausted by Plaintiff's having properly appealed the August 26, 2004, hearing decision. But Plaintiff did not exhaust the administrative appeal process. He did not file a Form BP-11 with the General Counsel challenging the Regional Director's rejection of Plaintiff's medical

---

[17]While Plaintiff was appealing the disciplinary conviction of August 26, 2004, he was also pursuing an appeal of a disciplinary conviction entered against him on September 30, 2004, wherein he was again found guilty of violating Codes 306 and 307. The Regional Director expunged the disciplinary action in its entirety because the staff at FCI-El Reno could not find the DHO report and related packet of documents. *See id.* Attachment 7 at 38-40.

16

defense. Moreover, the Regional Director's review of Plaintiff's disciplinary conviction was focused on whether Plaintiff had a valid defense to the disciplinary charge against him – that he was physically unable to follow the order. The outcome of the disciplinary conviction appeal would not necessarily have led to consideration of whether the prison personnel named as defendants in this action had been deliberately indifferent to Plaintiff's serious medical needs during the preceding time period. Accordingly, Plaintiff's appeals of disciplinary convictions did not exhaust his administrative remedies for any claims of deliberate indifference to his serious medical needs. Plaintiff's other claims of alleged retaliation and violations of the privacy act were likewise not addressed or exhausted through disciplinary appeals.

In sum, Plaintiff has not exhausted administrative remedies as to any of his claims based on acts or events occurring after May 16, 2002, and those claims should be dismissed without prejudice for failure to comply with the exhaustion requirement of the PLRA.

**B. Statute of Limitations**

Plaintiff exhausted his administrative remedies only as to claims arising before May 16, 2002, the date upon which Plaintiff began the grievance process regarding his claim of deliberate indifference to his serious medical needs. In their motions to dismiss, both Defendant Molskness and the Scibana Defendants contend that those claims, although exhausted in Plaintiff's 2002 administrative remedy process, are barred by the relevant statute of limitations. They are correct.

17

A *Bivens* action is subject to the same limitation period as is a civil rights action brought pursuant to 42 U.S.C. § 1983, and that limitation period is set by the personal injury statute in the state where the cause of action accrues. *See Roberts v. Barreras*, 484 F.3d 1236, 1238 (10th Cir. 2007). In Oklahoma, the limitations period for a *Bivens* action is two years. *See* Okla. Stat. tit. 12, § 95(A)(3); *see also Meade v. Grubbs*, 841 F.2d 1512, 1522 (10th Cir. 1988).

Although the length of the limitations period is determined by reference to the law of the forum state, accrual of the cause of action is determined by federal law. *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995) ("While state law governs limitations and tolling issues, federal law determines the accrual of section 1983 claims."). "Since the injury in a [civil rights] case is the violation of a constitutional right . . . such claims accrue 'when the plaintiff knows or should know that his or her constitutional rights have been violated.'" *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998)(quoting with approval *Lawshe v. Simpson*, 16 F.3d 1475, 1478 (7th Cir. 1994)); *see also Fratus v. DeLand*, 49 F.3d at 675 ("A civil rights action accrues when 'facts that would support a cause of action are or should be apparent.'") (citations omitted). The Court must therefore identify the alleged constitutional violation and locate it in time. *See Smith*, 149 F.3d at 1154.

Because the PLRA requires prisoners bringing civil rights actions to exhaust available administrative remedies before seeking relief in federal court, the majority of circuits to address the issue have concluded that the statute of limitations applicable to a civil rights action must be tolled while a prisoner completes the mandatory administrative remedy

18

process. *See Brown v. Valoff*, 422 F.3d 926, 943 (9ᵗʰ Cir.2005); *Johnson v. Rivera*, 272 F.3d 519, 522 (7ᵗʰ Cir. 2001); *Brown v. Morgan*, 209 F.3d 595, 596 (6ᵗʰ Cir. 2000); *Harris v. Hegmann*, 198 F.3d 153, 158-59 (5ᵗʰ Cir. 1999).[18] Assuming that Plaintiff's claims accrued when he began exhausting his administrative remedies on May 16, 2002,[19] and assuming that the two-year limitation was tolled until he completed the exhaustion process on October 4, 2002, *see* Special Report Exhibit 4, then Plaintiff's limitation period expired October 4, 2004. Plaintiff did not sign his Complaint, however, until October 27, 2005, and the Complaint was filed in this Court on November 7, 2005. Unless the two-year statute of limitations is subject to additional tolling, Plaintiff's claims arising before October 4, 2002, are barred by the limitation period and should be dismissed.

Plaintiff contends that the limitations period should be tolled under the Oklahoma tolling statute, Okla. Stat. tit. 12, § 96. *See* Response to [Scibana] Defendants' Supplemental Motion to Dismiss [Doc. #222] at 2. This statute provides a statutory tolling period for persons who are "under any legal disability." The statute does not, however, define the term "legal disability." Under Oklahoma law, however, "exceptions to the operation of a statute of limitations which toll its running in favor of persons under disability are to be strictly

---

[18]The Tenth Circuit has considered this legal issue, but has refrained from deciding it. *See Smith v. Ortiz*, No. 05-1211, 2006 WL 620871 (10ᵗʰ Cir. Mar. 14, 2006) ("Without deciding the legal issue, we conclude that both of Mr. Smith's non-frivolous claims were time barred even if the applicable limitations period was tolled while Mr. Smith exhausted his administrative remedies.") (unpublished op.).

[19]In his Complaint, Plaintiff states that he determined that his "injuries were more serious [than] a simple sprain" on November 15, 2001. He states that he believed his injury had been misdiagnosed and that Defendants were "being deliberately indifferent to [his] medical needs" on that same date. Complaint at 7.

19

construed, and never extended beyond their plain input." *Garrison v. Wood*, 957 P.2d 129, 130 n. 3 (Okla. Ct. App. 1997) (quotation omitted). The Tenth Circuit has rejected the argument that "incarceration amounts to a 'legal disability'" as "unconvincing." *See Ames v. Oklahoma*, No. 05-6226, 158 Fed. Appx. 114, 117, 2005 WL 3307433, *2 (10th Cir. Dec. 7, 2005) (unpublished op.). This Court has found no cases where a physical disability has been deemed a "legal disability," and Plaintiff has not cited any such cases. Therefore, Plaintiff's physical injuries do not toll the running of the limitations period.

Plaintiff further contends that the limitation period should be tolled until "the last overt act of the conspiracy of Defendants" to fraudulently conceal his claims. *See* Doc. # 222 at 2; *see also* Response to Supplemental Brief [of Defendant Molskness] [Doc. #206] at 3. Plaintiff did not assert in his Complaint any claims for conspiracy or "fraudulent concealment." Moreover, no facts or assertions in the Complaint support the existence of a conspiracy to fraudulently conceal claims, and the limitation period cannot be tolled under this theory.

Finally, Plaintiff contends that the limitations period should be equitably tolled under the "continuous act" doctrine. *See* Doc. #206 at 3; Doc. #222 at 2-3. The Tenth Circuit Court of Appeals has described the "continuing violation doctrine" as a "'general rule that has evolved in the Circuits that a plaintiff alleging a continuing violation of Title VII may file charges with the EEOC at any time during which the alleged continuing violation has taken place.'" *McCormick v. Farrar*, 147 Fed. Appx. 716, 720 (10th Cir. Aug. 30, 2005) (*quoting Rich v. Martin Marietta Corp.*, 522 F.2d 333, 348 n. 15 (10th Cir. 1975)). It is

20

unclear whether the doctrine is applicable to civil rights cases. *Id.* However, the Tenth Circuit has "declined to apply the doctrine in [a § 1983 civil rights case] because 'a plaintiff may not use the continuing violation theory to challenge discrete actions that occurred outside the limitations period even though the impact of the acts continues to be felt.'" *Id.* (*citing Pike v. City of Mission*, 731 F.2d 655, 660 (10th Cir. 1984)). In this case, Plaintiff is challenging numerous discrete acts by different defendants that occurred outside the limitation period. Therefore, the "continuing violation doctrine" is not applicable to this case. Because Plaintiff has submitted no facts to support the tolling of the limitation period, claims based on events occurring outside the limitation period should be dismissed as untimely.

## C.   Motion to Dismiss Submitted by Defendant Engle

Defendant Engle has moved to dismiss Plaintiff's claims because Plaintiff "mentions no wrong doing or negligence in his complaint regarding the defendant [Engle]. *See* Motion to Be Dismissed [Doc. #118]. Plaintiff identifies Defendant Engle as "an X-Ray Technician at F.C.I. El Reno." In his Complaint, he states only that "[s]he is responsible for taking and processing x-Rays." Complaint at 4. Plaintiff does not assert in his Complaint that Defendant Engle was deliberately indifferent to his serious medical needs or that she was in any way responsible for the alleged misdiagnosis of Plaintiff's ankle injury.

In his Response to Defendant Susan Engle's Motion to Be Dismissed [Doc. #162], Plaintiff alleges for the first time that Defendant Engle misdiagnosed a broken ankle, lacked in treatment, delayed treatment, failed to examine, willfully inflicted severe physical pain,

21

denied pain medication, misread x-rays, filed false statements, and participated in the retaliation. He further alleges that she had knowledge of "wrongs" and "did not act to [prevent] them." *Id.* at 2. Plaintiff also asserts for the first time that Defendant Engle voluntarily participated in the institution's "Utilization Review Committee that acted as a forum to conspire in violating Plaintiff's rights." *Id.* None of these claims appear in Plaintiff's long, detailed account of his interactions with staff members at FCI-El Reno. Plaintiff's Complaint names Defendant Engle as a party, but it lacks a factual basis for claims against her, and therefore it does not state a claim upon which relief may be granted against Defendant Engle. As with the Scibana Defendants and Defendant Molskness, moreover, any claims Plaintiff could assert against Defendant Engle are either barred by the statute of limitations or have not been exhausted through the grievance procedure. Accordingly, all claims against Defendant Engle should be dismissed without prejudice.

## D.     Claims Against Unresponsive and Unserved Defendants

Defendants T. Jordan, Edward McNerney, D. Luche, F. Molina, E. Feltz, J. Fowner, K. McCorkall, B.T. Jones, Mike Maize, and T.C. Peterson have all been served but have not answered or otherwise responded. Plaintiff has moved for default judgments against these Defendants [Doc. ##188; 222]. Based on the foregoing analysis of meritorious affirmative defenses asserted by Defendant Molskness and the Scibana Defendants, all of which are equally applicable to the claims against the unresponsive and unserved defendants, it is recommended that Plaintiff's Motions for Default Judgment be denied and that the claims

22

against both the unresponsive and unserved defendants be dismissed pursuant to 28 U.S.C.

§ 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

Default judgments are not favored by courts, *see Katzson Bros., Inc. v. United States*

*Environmental Protection Agency*, 839 F.2d 1396, 1399 (10th Cir. 1988), and decisions

regarding default judgments are left to the discretion of the district court. *See Ashby v.*

*McKenna*, 331 F.3d 1148, 1152 (10th Cir. 2003). Pursuant to Fed.R.Civ.P. 55(b)(2), it is

within a district court's discretion to deny a request for default judgment when the plaintiff's

complaints are legally insufficient to state a claim. *See Garrett v. Seymour*, No. 06-7029,

217 Fed. Appx. 835, 838 (10th Cir. Feb. 23, 2007) (*citing Grandbouche v. Clancy*, 825 F.2d

1463, 1468 (10th Cir. 1987)) (unpublished op.).

In a case where, as here, the court has permitted a plaintiff to proceed without the

prepayment of fees, 28 U.S.C. § 1915(e)(2) provides that,

> [n]otwithstanding any filing fee, or any portion thereof, that may have been
> paid, the court shall dismiss the case at any time if the court determines that-
>
> (A) the allegation of poverty is untrue; or
>
> (B) the action or appeal-
>
> > (i) is frivolous or malicious;
> > (ii) fails to state a claim on which relief may be granted; or
> > (iii) seeks monetary relief against a defendant who is immune from
> > such relief.

A district court may *sua sponte* and "at any time" dismiss an action under § 1915(e)(2) "for

failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to

relief." *Jones v. Bock*, 127 S.Ct. at 920. "'Dismissal of a *pro se* complaint for failure to state

23

a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend.'" *Kay v. Bemis*,  500 F.3d 1214, 1217 (10th Cir. 2007) (*quoting Curley v. Perry*, 246 F.3d 1278, 1281 (10th Cir. 2001)). "'In determining whether a dismissal is proper, we must accept the allegations of the complaint as true and construe those allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff.'" *Id.* (*quoting Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002)).

As discussed above, the fully developed record on remand demonstrates that Plaintiff's action in its entirety is legally insufficient as to all named defendants. Plaintiff has exhausted administrative remedies only as to claims occurring before he initiated the grievance procedure in 2002, and those claims are all barred by the applicable statute of limitations. All claims not barred by the statute of limitations are subject to dismissal under the PLRA based on Plaintiff's failure to exhaust administrative remedies. Accordingly, all claims against the unresponsive defendants and the defendants who were not served should be dismissed at this time for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## E.    Plaintiff's Motions for Injunctive Relief

Also pending before this Court are two motions for injunctive relief: Plaintiff's Motion for Temporary Restraining Order [Doc. #211] and Plaintiff's Motion for Preliminary Injunction [Doc. # 216]. The claims for relief asserted in these Motions are not based on the alleged occurrences or events or claims for relief asserted in the Complaint. Instead, these

24

Motions attempt to assert new allegations and new claims based on Plaintiff's contention that his right to access the courts was violated on July 27, 2007, when prison officials charged him with Lying to Staff, Unauthorized Use of Mail, and Unauthorized Contact with the Public and placed him in the SHU.[20] *See* Doc. #211 at 1-3; Doc. #216 at 2. Plaintiff contends these were false charges designed to prevent him from having access to the courts, and he also asserts that when he was taken to the special housing unit as a result of the disciplinary action, Defendant Ashley took away Plaintiff's cane causing Plaintiff to "endure added physical pain[.]" Doc. #211 at 2. *See also* Doc. # 216 at 2. Plaintiff's Motions are, in essence, attempts to file a supplemental complaint based on events or occurrences that have taken place after the filing of this action. Plaintiff has not sought or received leave of court to file a supplemental complaint and, therefore, these pleadings are subject to being stricken for failure to obtain leave of court as required by Rule 15(d) of the Federal Rules of Civil Procedure.[21]

---

[20]Challenges to disciplinary actions must be brought in a habeas action pursuant to 28 U.S.C. § 2241, not in a civil rights action. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (claim of deprivation of due process in prison disciplinary proceedings that necessarily implies invalidity of punishment imposed not cognizable under § 1983). If Plaintiff wishes to challenge the disciplinary action, he must file a separate habeas action after exhausting administrative remedies

[21]Rule 15(d) of the Federal Rules of Civil Procedure provides:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transactions, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Fed.R.Civ.P. 15(d).

Even if leave to file and serve a supplemental complaint were given, however, Plaintiff's claims for injunctive relief are legally deficient and should be denied. To obtain preliminary injunctive relief pursuant to Fed. R. Civ. P. 65, the moving party must show (1) irreparable injury absent issuance of the injunction; (2) the threatened injury outweighs any damage the proposed injunction may cause the opposing party; ( 3) the injunction, if issued, would not adversely affect the public interest; and (4) a substantial likelihood of success on the merits. *See, e.g., Oklahoma, ex. rel. Oklahoma Tax Com'n. v. International Registration*, 455 F.3d 1107, 1112-1113 (10th Cir. 2006). Plaintiff has not made any of the required showings.

Plaintiff has not demonstrated that his constitutional right to access the courts has been violated. Prisoners do have a constitutional right to access the courts, *see Bounds v. Smith*, 430 U.S. 817, 821 (1977), and that right does extends to civil rights claims. *See White v. Colorado*, 157 F.3d 1226, 1233 (10th Cir. 1998). Notwithstanding this right, however, an inmate alleging a constitutional violation must demonstrate that he suffered actual injury. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996). As the Supreme Court explained in *Lewis*, the actual injury requirement derives from the doctrine of standing, which seeks to constrain courts to their proper role of providing relief to claimants who have suffered, or will imminently suffer, actual harm, without usurping the political branches' authority to administer government institutions. *Id.* at 349-50. Were the actual or imminent injury requirement absolved, courts of law would find themselves enmeshed in the administrative function of other government branches. *See id.* at 350. Plaintiff has not pled any actual or

imminent injury (such as having a valid complaint dismissed or other detrimental result in

a court case) that has or likely will result from the actions of prison officials.

Plaintiff's allegation regarding Defendant Ashley's alleged removal of his cane in the

special housing unit also fails to rise to the level of a constitutional violation. To establish

an Eighth Amendment violation, Plaintiff would have to demonstrate that defendants acted

with deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S.

97, 104 (1976).

> "Deliberate indifference" involves both an objective and a subjective
> component. The objective component is met if the deprivation is sufficiently
> serious. A medical need is sufficiently serious if it is one that has been
> diagnosed by a physician as mandating treatment or one that is so obvious that
> even a lay person would easily recognize the necessity for a doctor's attention.
> The subjective component is met if a prison official knows of and disregards
> an excessive risk to inmate health or safety.

*Sealock v. State of Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quotations and citations

omitted). Additionally, a difference of opinion between Plaintiff and prison officials about

the medical necessity of a cane does not constitute deliberate indifference. *See Johnson v.*

*Stephan*, 6 F.3d 691, 692 (10th Cir. 1993) (a prisoner's difference of opinion with prison

medical personnel regarding the type of treatment he should receive does not rise to the level

of a constitutional violation).

Although Plaintiff believes he still needs a cane to walk, the medical staff disagrees,

as reflected in the medical records discussed *supra* at 13-14. Moreover, in the letter from the

Regional Director to the warden discussed *supra* at 15, the Regional Director stated that the

disciplinary hearing officer had found no validity in Plaintiff's claim that he cannot walk

without a cane. This letter also demonstrates the opinion of prison officials that Plaintiff did not require a cane. This difference of opinion does not rise to the level of deliberate indifference.

Because Plaintiff has failed to state claims of constitutional violations in his motions, he cannot demonstrate that he will suffer irreparable injury absent issuance of the injunction, that the threatened injury outweighs any damage the proposed injunction may cause the opposing party, that issuing an injunction would not adversely affect the public interest in keeping the courts from becoming enmeshed in the administrative function of other branches of the government, or that he has a substantial likelihood of success on the merits. Therefore, these motions should be denied.

## RECOMMENDATION

It is recommended that the Motions to Dismiss of the Scibana Defendants as supplemented, Defendant Molskness as supplemented, and Defendant Engle [Doc. ##91/214; 148/197 and 118] be granted. The claims asserted in Plaintiff's Complaint are either time-barred or subject to dismissal without prejudice for failure to exhaust administrative remedies. It is recommended that all claims against the unresponsive Defendants (Jordan, McNerney, Luche, Molina, Feltz, Fowner, McCorkall, Jones, Maize and Peterson) and unserved Defendants (Castro and Lee) be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii) and 1997e(c)(1). It is further recommended that Plaintiff's motions for entry of default judgment [Doc. ##188, 224] and motions for injunctive relief [Doc. ##211, 216] be denied.

## NOTICE OF RIGHT TO OBJECT

Plaintiff is advised of his right to object to this Report and Recommendation. *See* 28 U.S.C. §636. Any objections should be filed with the Clerk of this Court by January 16 , 2008. Plaintiff is further advised that failure to file a timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of the issues referred by the District Judge.

IT IS SO ORDERED this 27th day of December, 2007.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE

29